UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

```
DEAN A. BYSTROM,                  )
                                  )
        Plaintiff,                )
                                  )
    v.                            )         Case No. 05-4031
                                  )
JO ANNE B. BARNHART,              )
COMMISSIONER OF SOCIAL            )
SECURITY ADMINISTRATION,          )
                                  )
        Defendant.                )
```

## O R D E R

Before the Court are Plaintiff's Motion for Summary Judgment [Doc. # 12] and Defendant's Motion for Summary Affirmance [Doc. # 15]. For the reasons set forth below, Plaintiff's Motion will be denied and Defendant's Motion will be GRANTED.

### I.   Background

Plaintiff filed applications for Social Security Disability Insurance and Supplemental Security Income (SSI) on February 20, 2002, alleging a disability onset date of August 30, 2001. (R. at 41-43, 142-144.) Plaintiff was forty-four on the date he filed his applications. (R. at  41.)  He had a high school education, and had previously worked as a car wash attendant, heavy truck driver, material handler, merchandise deliverer, industrial cleaner, hand packager, and kitchen helper. (R. at  55, 60, 67-71).  Plaintiff alleged he was disabled due to depression, social anxiety, and injury to his head, back, and hand. (R. at 54.) He reported that he stopped working after August 30, 2001, because he could not deal with the people at his work, especially the authorities. (R. at 54.)  On May 29, 2002, the Social Security Administration (SSA)

denied Plaintiff's claim for benefits based on a determination that he was not disabled; his timely reconsideration request was denied on July 29, 2002. (R. at 31-39.) Plaintiff then requested a hearing before an administrative law judge (ALJ). (R. at 40.) Plaintiff (who was represented by counsel) and a vocational expert ("VE") testified at the July 8, 2004 hearing. (R. at 148-182.) In an unfavorable September 22, 2004 decision, the ALJ found that Plaintiff suffered from recurrent major depression, post traumatic stress disorder ("PTSD"), and alcohol dependence in partial remission. (R. at 12.) However, based on the testimony of the VE, the ALJ found that Plaintiff could perform his previous work as well as other work, and thus was not disabled. (R. at 15.) Plaintiff filed a timely Request for Review of Hearing Decision with the Appeals Council. (R. at 7-16.) On February 25, 2005, the Appeals Council denied Plaintiff's request for review. (R. at 4-6.) Plaintiff then timely filed his Complaint in this action on April 7, 2005.

The record reveals the following regarding Plaintiff's impairments. In April 2002, Plaintiff underwent a consultative psychiatric evaluation with Michael W. Stempniak, M.D. (R. at 105-08.) Dr. Stempniak noted that Plaintiff "tended to be a little vague but did answer the questions asked of him and gave some examples so a reasonably good estimate of present functioning was seemingly obtained." (R. at 105.) Dr. Stempniak reported Plaintiff's complaints of depression and social anxiety for "some years." He indicated that ordinary activities of daily living seemed to pose no problem for Plaintiff, and that Plaintiff was

able to drive and did chores such as sweeping, organizing, and shopping. (R. at 105-06.) Plaintiff was alert and oriented with excellent eye contact, and his affect was average. (R. at 106.) Regarding Plaintiff's mood and affect, Dr. Stempniak reported:

> He stated his mood is usually not good, happy with a lot of different people, and fun being music of all types. He stated that he was most uncomfortable in interviews like this, job applications, and having to answer questions. Affect seemed within the average range.

(R. at 106.) Plaintiff's speech was reported as clear but vague and his psychomotor activity was low average. Plaintiff reported prior physical abuse by his parents and ex-wife, and that he would hear parental voices which were not actual voices but were like a conscience. Plaintiff denied hallucinations and denied ever deliberately harming himself or intending to. He said he had social discomfort and avoided crowds. Dr. Stempniak said Plaintiff's immediate memory was in the high average range. (R. at 106-07.)

Dr. Stempniak diagnosed mild panic disorder without agoraphobia, concluding that Plaintiff avoided being put under pressure and doing tasks that required sustained effort. As an example, Dr. Stempniak noted that Plaintiff did not do simple arithmetic when asked, which was inconsistent with his high average memory in repeating digits.

In May 2002, Kirk W. Boyenga, Ph.D., reviewed the record and concluded there was evidence of an affective disorder (depression) and an anxiety-related disorder (mild panic disorder). (R. at 113-29.) Dr. Boyenga assessed Plaintiff's ability to perform work-related mental activities and concluded that Plaintiff was

moderately limited in his ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or proximity to others without being unduly distracted by them; to complete a normal workweek without interruption from psychological symptoms and perform at a consistent pace without unreasonable rest periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting. (R. at 127-29.) Dr. Boyenga also concluded that Plaintiff had no marked limitations and was not significantly limited in twelve other mental work-related abilities. (R. at 127-28.) Dr. Boyenga summarized his conclusions as follows:

> Claimant experiences an anxiety disorder. There is no documentation of inpatient or outpatient mental health treatment. There is no indication of serious memory or understanding impairment, as confirmed by exam. Sustained concentration is impaired, but allows the performance of simple tasks. This is confirmed by the ability to pay bills, shop, clean and pursue a hobby. Social skills are impaired, but allow settings with reduced interpersonal contact. Claimant is able to retain friendships. Adaptation abilities are impaired. However, claimant can perform routine, repetitive tasks, as indicated by the ability to follow instructions and travel independently.

(R. at 129.)

In September 2002, a social worker examined Plaintiff on self-referral. (R. at 133-34.) Plaintiff reported that he had no job and no desire to find one, that he had been depressed for years, that he had been abused as a child, and that he had abused alcohol in the past. The social worker observed:

> The client's motor activity is slowed down. Nutrition, appearance and speech are normal. Impulse control is limited. Hedonic functioning is impaired. He has

4

>    difficulty getting to sleep, sometimes he is up all
>    night. He has a variable appetite. He is fatigued. He
>    has anxiety attacks occasionally on holidays especially,
>    having headaches, muscle tension, back and hand pain. He
>    has trouble with memory and concentration. Attention
>    span was adequate. Judgment is fair. Cognitive thought
>    process is normal. He was oriented to person, place and
>    time. He has average intelligence. Insight is fair. He
>    has had voices talking about things from the past. He
>    denies any delusions. He is phobic to crowds. His self-
>    esteem is very poor. He has anxiety and occasional
>    anxiety attacks. He is having flashbacks on a daily
>    basis. He has depression and irritability. His
>    flashbacks consist of thinking about his injury and past
>    abuse. He denies any suicidal or homicidal thinking. He
>    is withdrawn and is somewhat quiet during the interview.

(R. at 133.) The social worker noted that Plaintiff was not currently taking any medication, and assessed Plaintiff's GAF[1] as 35[2]. (R. at 134.)

In September 2002, psychiatrist Robert Lawton, M.D., saw Plaintiff on referral from the social worker, for a consultative evaluation. (R. at 131-32.) Plaintiff reported being abused as a child and of alcohol and substance abuse as an adult. (R. at 131.) Plaintiff said he had difficulty committing to any particular job and often just walked away if confrontation arose. Plaintiff was

---

[1] A GAF score is a rating on a scale of 0 to 100 which represents a clinician's judgment as to an individual's overall psychological functioning; lower scores indicate a greater level of impairment and higher scores indicate a higher level of functioning. American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed., text rev. 2000) ("DSM-IV").

[2] A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g. depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."

living with his girlfriend and her parents, who were supporting him. Plaintiff reported to Dr. Lawton that he hoped he could help bolster his claim for disability benefits so that he could be insulated from the stressors of working. Plaintiff's appetite, memory, and concentration were good. Plaintiff reported he preferred solitary activities, such as watching television, walking in the woods, and listening to music. During the mental status examination, Plaintiff appeared cooperative and deferential, but his answers were vague. His affect was moderately isolated, but he became irritated when describing his previous experience with using medication and his unwillingness to consider further use of psychotropic medication. Plaintiff's speech was slow but well-articulated and goal-directed without blocking or pressure. Thought processes were coherent and logical without any evidence of a thought disorder or organicity. Plaintiff denied any suicidal or homicidal intent, and denied hallucinations or delusions. Dr. Lawton noted that Plaintiff made no mention of any flashbacks or pathological memories of past trauma, as he had mentioned in the evaluation with the social worker. (R. at 131-132.)

Dr. Lawton observed that Plaintiff was generally vague as to his particular complaints, "but was much clearer about expressing his hope that I would be able to ensure he receive money." Dr. Lawton diagnosed depressive disorder and avoidant personality disorder and assessed Plaintiff's GAF score as 50[3]. (R. at 132.)

---

[3]A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

Dr. Lawton said that Plaintiff rejected the use of psychotropic medications and was leery about committing himself to psychotherapy; he made no follow-up appointment but indicated Plaintiff could return to see him if his situation changed. (R. at 132.)

In October 2002, Dr. Lawton reported that "[w]hile there was little change in [Plaintiff's] mental status during the session. [Plaintiff] said he had decided that he would like a trial of medication." (R. at 130.) Dr. Lawton noted that Plaintiff remained fairly guarded and vague about his complaints, but said he was having difficulty getting along with other people. He said he had not been able to take care of the problem on his own and wanted to see if medicine would help him feel more calm. Dr. Lawton said he questioned Plaintiff's motivation given his previous presentation but thought it was reasonable to begin a trial of medication. He prescribed Effexor and planned a four to six week follow-up.

In December 2002, Dr. Lawton completed a form about Plaintiff's ability to perform mental work-related activities. (R. at 139.) Dr. Lawton did not indicate that he had seen Plaintiff since his October 2002 visit. Dr. Lawton said Plaintiff had a very good or an unlimited ability to remember work-like procedures and to understand, remember, and carry out very short and simple instructions; and a good ability to maintain attention for two hours at a time, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, work near others without being unduly distracted, make simple work-related

decisions, perform at a consistent pace without unreasonable rest periods, and be aware of workplace hazards and take appropriate precuations. Dr. Lawton noted Plaintiff had a fair ability to ask simple questions or request assistance, accept criticism and instructions from supervisors appropriately, get along with co-workers or peers without unduly distracting them or demonstrating behavioral extremes, respond appropriately to changes in the work settings, dealing with work stressors, and completing a normal workday and work week without interruptions from psychological symptoms.  Dr. Lawton further noted that Plaintiff had a fair ability to interact with the general public, maintain socially appropriate behavior and use public transportation.  Dr. Lawton noted on the form that Plaintiff tended to isolate himself, think critically of others, and leave a situation rather than confront a person or problem, and that Plaintiff preferred no to use public transportation.  (R. at 139-140.)

At the administrative hearing, Plaintiff testified that he did not like to be around people and wanted to isolate himself, especially from harsh or aggressive people.  (R. at 153-54, 159-60.)  He said he had trouble keeping up with the pace of work at his past jobs.  (R. at 160-61.)  Plaintiff described his anxiety attacks as "the urge to just be alone" and a feeling of nervousness.  (R. at 154.)  He stated that he sometimes felt irritable.  (R. at 157.)  Plaintiff said he had problems remembering things like phone numbers or even his address.  (R. at 157.)  Plaintiff acknowledged that he was not in treatment and currently had no health insurance.  (R. at 155.)  He said he had

8

tried medication, but was reluctant to use it because "they can't give you anything that you can't just quit if you feel like quitting." (R. at 156.)  Plaintiff indicated he spent most of his days watching television, sleeping, and listening to music. (R. at 153, 165.)  Plaintiff testified he did not leave his room for twenty to twenty-five days per month.  (R. at 163-64). Plaintiff said somebody cooked for him, and his girlfriend did his laundry, though he could do his own laundry.  (R. at 163, 165.)

The ALJ asked a vocational expert whether an individual with Plaintiff's vocational profile could perform any of Plaintiff's past work or any other jobs if that individual could perform simple, routine, repetitive work that did not involve any interaction with the public, although the public may be physically present in the work area; which did not involve any more than short, superficial, mostly nonverbal interaction with coworkers; and which involved manual rather than verbal duties.  (R. at 75-76.)  The individual further required work that did not involve any fast pace, strict quotas or timeframes, or handling of emergency situations or any type of complaints; that did not require any remembering of detailed information in order to complete the job or relaying of detailed information and data to others; and that did not involve close supervision.  (R. at 176.)  The vocational expert testified that such an individual could perform Plaintiff's past work as an industrial cleaner as he performed it, as well as other unskilled work including cleaner/housekeeper jobs (1,000 in Iowa; 400,000 plus nationwide); coin machine collector jobs (500 in Iowa; 40,000 plus nationwide); and escort vehicle driver jobs (450 in

9

Iowa; 20,000 plus nationwide).  (R. at 176.)

The ALJ next asked the VE to consider what effect it would have on Plaintiff's ability to perform work if Plaintiff would be unable to attend to tasks or the work site or remain at the work site up to 25 times per month.  The VE responded that Plaintiff could not perform any type of competitive employment with this limitation.

Plaintiff's attorney asked the VE if Plaintiff were "seriously limited" in completing a normal workday or workweek without interruptions from psychologically based symptoms, in asking simple questions or requesting assistance, in accepting instructions and responding appropriately to criticism from supervisors, in getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, in responding appropriately to changes in routine work settings, in dealing with normal work stress, in interacting appropriately with the general public, and in maintaining socially appropriate behavior, along with his age and education, would he be able to return to any of his past work or would he be able to do any alternate work.  The VE answered that this "combination of seriously limited impairments" would not allow competitive employment. (R. at 178-80.)  The VE further opined, in response to questioning, that if Plaintiff were to miss 10 percent of the workdays in a month on a consistent basis, he would not be employable.  (R. at 181.)

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date and that he suffered the severe impairments of recurrent major depression, PTSD, and

alcohol dependence in reported partial remission. (R. at 12). The ALJ concluded, however, that Plaintiff's allegation as to the severity of his symptoms and as to the associated functional restrictions were not consistent with the medical evidence of record, which the ALJ found demonstrated Plaintiff "sought little in the way [of] treatment for his alleged disabling mental and emotional symptoms, and the limited evidence of record indicates that [Plaintiff's] impairments are not disabling, further suggesting that [Plaintiff's] alleged symptoms could be further attenuated by aggressive counseling and medication compliance." (R. at 13.) The ALJ also discounted the September 2002 report from the social worker, finding Dr. Lawton was more qualified to render an opinion as to Plaintiff's level of functioning. (R. at 15.) The ALJ then concluded that it was reasonable for Plaintiff to work within the restrictions suggested in Dr. Lawton's December 2002 report. (R. at 15.) The ALJ summarized those restrictions as follows:

> [C]laimanat is capable of simple, routine, repetitive work with no interaction with the public, though the public may be present in the work area. He may be able to perform work with no more than short, superficial, mostly non-verbal interaction with co-workers when performing work, which should involve manual duties rather than verbal work. He cannot work in a stressful environment involving fast pace, strict quotas, strict time-frames, handling emergency situations or handling complaints, and he cannot be required to remember detailed information to complete assigned job tasks or relate detailed information or data to others. Claimant has no significant physical limitations, as shown by the nearly normal signs and findings reported in an April 2002 physical examination and report by Dr. S. Rabinowitz.

(R. at 15.)   Based on the VE's testimony, the ALJ found that

11

Plaintiff could perform his previous work as a cleaner and that he could also perform the work of cleaner in lodging/housekeeper, coin machine operator, and escort vehicle driver. (R. at 15.) Accordingly, the ALJ found that Plaintiff was not disabled. (R. at 16.)

## II. Legal Standard

In order to be entitled to disability insurance benefits, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. See 20 C.F.R. § 404.1505. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. See 20 C.F.R. § 404.1566.

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c (a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. See McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. See 20 C.F.R. §§ 404.1520.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. § 404.1521,); (3) does

the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Pt. 404, Subpt. P, App. 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. See Garfield v. Schweiker, 732 F.2d 605, 607 n.2 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. See Tom v. Heckler, 779 F.2d 1250, 1253 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221, 1225 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. See Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. See Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. See Imani v. Heckler, 797 F.2d 508, 510 (7th Cir.), cert. denied, 479 U.S. 988 (1986).

### III. Analysis

Plaintiffs arguments are premised on the fact that the ALJ's findings regarding Plaintiff's limitations differ from Dr. Lawton's assessment. In particular, the ALJ did not account for Dr. Lawton's opinion that Plaintiff had only a fair ability to complete a normal workday and workweek without interruptions from psychological symptoms and to use public transportation, and that his GAF was 50. Further, Plaintiff argues that the ALJ overstated Plaintiff's ability to deal with work stress.

Under the applicable regulations, a claimant can only be found disabled if he is unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 20 C.F.R. § 404.1527. An impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Id. A mental (or physical) impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and not only by a claimant's statement of symptoms. See 20 C.F.R. § 1508. It is the Commissioner's responsibility to make the determination or decision about whether a claimant meets the statutory definition of disability by

reviewing all of the medical findings and other evidence that support a medical source's opinion.  See 20 C.F.R. § 404.1527(e).

In this case, Plaintiff's psychological symptoms were self described as an "urge to be alone" and feeling of nervousness, and occasional irritability.  Plaintiff reported that he had trouble keeping up with the pace of work at his past jobs and the record showed that Plaintiff often walked away from jobs when confronted.  He also reported that he did not leave his room for twenty to twenty-five days per month and that he spent his time watching television, sleeping, and listening to music.  Although Plaintiff reported he had trouble remembering things, in April 2002, Dr. Stempniak observed Plaintiff had a high average memory "in repeating digits."  Plaintiff also reported "flashbacks" and hearing parental voices, although these were not consistently reported to the treating and examining clinicians.

Based on these symptoms, Dr. Lawton opined how Plaintiff was impaired in work related activities.  In this regard, Dr. Lawton's conclusions that Plaintiff had only a fair ability to complete a normal workday and workweek without interruptions from psychological symptoms and to use public transportation are Dr. Lawton's opinions about how Plaintiff's psychological impairments would impact his ability to work.  As such, these conclusions were not binding on the ALJ and the ALJ was free to disregard those opinions not supported by the medical evidence.  Indeed the only evidence to support Dr. Lawton's opinion that Plaintiff had a fair ability to use public transportation is his observation that Plaintiff preferred not to.  Further, considering Plaintiff's

limited symptomology and the absence of any sustained treatment for these symptoms, the Court finds the ALJ was also justified in ignoring Dr. Lawton's opinion that Plaintiff had only a fair ability to complete a normal workday and workweek without interruptions from psychological symptoms.  Also, Dr. Lawton's GAF score of 50 is not dispositive as the number is descriptive of Plaintiff's overall functioning and says nothing specific as to Plaintiffs work relate abilities.

In summary, the Court finds the ALJ's findings regarding Plaintiff's work related abilities were supported by substantial evidence.  Indeed, the Court believes the ALJ's work related limitations were generous considering the limited symptomology of Plaintiff, the absence of any sustained treatment for these symptoms, and Dr. Lawton's scepticism about Plaintiff's motivation in seeking treatment.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment [Doc. # 12] is DENIED and Defendant's Motion for Summary Affirmance [Doc. # 15] is GRANTED.

CASE TERMINATED.


Entered this  <u>19th</u>  day of September, 2006.


                                           s/ Joe B. McDade
                                             Joe Billy McDade
                                    United States District Judge